SHELDON (NIGHTINGALE v.). See Case No. 10,265.

SHELDON (ROBERTS v.). See Case No. 11,916.

SHELDON (STEAM CUTTER CO. v.). See Case No. 13,331.

## Case No. 12,749.

### SHELDON et al. v. SWARTWOUT.

[47 Niles' Reg. 189.]

District Court, S. D. New York. Nov. 12, 1834.

CUSTOMS DUTIES — CLASSIFICATION FOR DUTY — CAMBRIC HANDKERCHIEFS.

[Cambric linen handkerchiefs, cut from the piece, and hemmed and stitched abroad, are not dutiable as millinery, ready-made clothing, or a manufacture of flax, but are free of duty, as "linen cambric." Tariff Act 1832 (4 Stat. 583).]

This was an action to recover $15,804, paid by plaintiffs [F. H. Sheldon & Co.] to defendant [Samuel Swartwout], under the following circumstances: The plaintiffs are extensive importers, residing in this city, and in the month of April last, imported a quantity of cambric linen or Batiste handkerchiefs, by the ship Charlemagne, from France. The handkerchiefs were cut off from the piece, and hemmed and stitched in France. On their arrival here, they were entered as free goods; but the collector asserted that they were subject to duty, and insisted on a new entry. In compliance with the collector's demand, the plaintiffs made a new entry of the goods, and passed a bond for the duty; but, while doing so, informed the collector that it was compulsory on their part, and asked him whether, in case they refused to pay this bond, he would take their bond for the duty that might accrue on other importations. The collector answered them in the negative, and in order to avoid the inconvenience that must otherwise result to them, they paid the bond, and served him with a written notice that they would bring an action to recover back its amount. The collector claimed a duty of 25 per cent. on the articles, under the tariff of 1832 [4 Stat. 583], which subjects all manufacturers of hemp, flax and millinery of all kinds, to a duty of 25 per cent., and averred that the article in question came under the denomination of millinery. Mr. Price, counsel for defendant, also contended, that if the article did not come under the denomination of millinery, it was to be considered a manufacture of flax, also subject to a duty of 25 per cent., and if it was neither of these articles, it might then be considered an article of ready-made clothing, which was subject to a duty of 50 per

cent. It was admitted on the part of the defendant, as a matter of course, that linen cambrics and linen cambric handkerchiefs in the piece, are free from duty; but it was contended that as the handkerchief had been cut off from the piece, and hemmed and stitched in France, it no longer came under the denomination of linen cambric, but assumed a new character, and was either millinery, a manufacture of flax, or ready-made clothing. The defendant, however, chiefly rested his claim on the ground that the article was millinery; and Mr. Coe, an appraiser at the custom house, produced his instructions from the comptroller of the treasury, informing him that the article came under the head of millinery, and was to be charged with duty as such. On the other hand the plaintiffs contended that the article was linen cambric, and as such was free, under the act of 1833, which says that "bleached and unbleached linen, table linen, linen napkins and linen cambrics, are exempt from duty."

A great number of witnesses were examined on both sides. The counsel for both parties, and also the court, took every possible pains to elicit from them a decided opinion—First, whether they considered the article millinery; and, secondly, whether it was denominated cambric by merchants or persons dealing in the article. As to its being millinery, almost all the witnesses deposed that it could not come under that denomination. There was also scarcely any evidence to show that the article could be considered ready-made clothing; and the only question which seemed to admit of any great doubt, was, whether the article, after it was cut from the piece, and hemmed and stitched in the form of a handkerchief, could be still denominated linen cambric, and as such be imported free of duty. On this part of the question the evidence was rather vague and inconclusive; but on the whole, made in favor of the assumption that the article came under the denomination of linen cambric. Counsel for defendant raised a question as to whether the plaintiffs could maintain the present action, as they had voluntarily paid the bond; and the court reserved this question for future consideration.

THOMPSON, Circuit Justice, charged the jury that the government claimed the duty on the article as being millinery; and it was for the jury to decide whether it came under that denomination. They had heard the definition given of it in dictionaries and by the witnesses, but it would also be well to look at the manner in which it was designated by law, and see if congress meant to include handkerchiefs under the denomination of millinery. The act in defining what belongs to millinery, says, "fans, flowers, feathers, caps for women, and millinery of all kinds."

When the act therefore began its description by enumerating a series of articles belonging to the head, and then said, "millinery of all kinds," it was fair to suppose that the general term was intended to apply to such articles. According, also, to most of the witnesses, the word millinery was only applicable to ladies' head dress, and in the judgment of the court, the article in question could not properly be denominated millinery. That the article is a manufacture of flax there could be no doubt; and as such the plaintiffs should show that it came under the exemptions of the law relative to linen fabrics. Many witnesses had been examined on the subject, but could not agree as to what constituted linen cambric. Most of them, however, said that it meant piece goods sold by the yard; and when asked what they understood the handkerchief to be, they said it could not be called linen cambric alone, but required a further designation, and that the term linen cambric did not include linen cambric handkerchiefs. At the custom house, however, handkerchiefs in the piece are considered linen cambric, and admitted free. The question, then, was, whether the handkerchief being cut off and hemmed, took it out of the denomination of linen cambric. If so, it was but reasonable that the government should show it. It was said that the article came under the denomination of millinery, or ready-made clothes; but was there sufficient evidence to enable them to say it was either? If not, then it might come under the denomination of a manufacture of flax, unless it was exempted by the act of 1833 [4 Stat. 629] as linen cambric. It was said, that the reason why this article had been subject to duty, was with a view to protect the labor and industry of the country; but if that was the object which government had in view, it would have adopted a similar course regarding similar articles, and it had been shewn to the jury that silk handkerchiefs, veils and other made up articles were admitted free of duty; and it was but reasonable to suppose that the same principle was to be extended to linen cambric handkerchiefs. The object of congress in admitting silk free of duty, was to encourage its importation; and it was the same in relation to linens. The question then was, did the article amongst buyers and sellers come under the denomination of linen cambric? If so, it was exempt from duty; if not it was subject to it.

The jury retired for a short time and returned a verdict for the plaintiffs of $162.60, being the amount of the money paid the collector with interest.